IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT W. COLE, | : | |
| Plaintiff, | : | Case No. 2:03-CV-1225 |
| v. | : | Judge Holschuh |
| ABBOTT LABORATORIES, | : | Magistrate Judge Abel |
| Defendant. | : | |
| | : | |

**MEMORANDUM OPINION & ORDER**

After being terminated, Plaintiff Robert W. Cole filed suit against his former employer, Abbott Laboratories, alleging a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.  This matter is currently before the Court on Defendant's motion for summary judgment.  (Record at 46).  For the reasons set forth below, Defendant's motion is granted.

**I.      Background and Procedural History**

Cole, a certified medical technologist, was employed by the Ross Products Division of Abbott Laboratories from 1970 until his termination in May of 2001.  Most recently, he was employed in Texas as a District Manager for Medical Nutritional Sales, supervising approximately ten sales representatives.  (Cole Dep. at 8-16, 179-80).  In 2000, Cole earned the President's Council Award as the top district manager in his region based on his outstanding sales figures.  (Id. at 21, 44).  Cole generally received positive annual performance evaluations from his regional manager, Thomas Winterburn.  (Id. at 30, 34, 37; Winterburn Dep. at 83-84, 95, 102, 109-110).

In April of 2000, Greg Lindberg, Vice President for Sales of Ross Products, learned that Winterburn had received a complaint from one of Cole's district sales representatives, Annette Cline. Cline said that Cole told her that because she had interviewed for another position at Abbott, she was not getting a pay raise. She maintained that Cole had treated her poorly ever since he learned that she was involved in an interracial relationship. She also complained that Cole had sent a copy of a written reprimand against her to a customer. (Winterburn Dep. at 147; Cole Dep. at 346-47). Lindberg found this to be totally inappropriate.

Moreover, Lindberg was not pleased with the leadership Cole had displayed at the last district meeting. Lindberg specifically directed Winterburn to provide additional guidance and feedback to Cole.[1] (Lindberg Dep. at 79). As a result, Winterburn's initial annual performance evaluation of Cole in May of 2000 ranked Cole lower than usual in several areas. Cole consulted an attorney and refused to sign the evaluation. This prompted Winterburn to make some revisions, but Winterburn warned Cole at that time that Cole's job could be in jeopardy "not because of your age, because of judgment issues." (Cole Dep. at 115, 351-52). He advised Cole not to send copies of reprimands to customers and told him to stop making off-color comments at work. (Id. at 346-50).

On July 28, 2000, a woman named Allison Heinrich wrote to Abbott complaining that Cole had treated her very rudely at a recent job fair. (Id. at 158 and Ex. 18 to Cole Dep.). Lindberg reviewed her letter and asked Cole to apologize to her. (Lindberg Dep. at 51-53). Lindberg sent another memo to Winterburn expressing continuing concern over Cole's poor

---

[1] Lindberg was critical of Winterburn's leadership skills. Winterburn received negative performance appraisals in 2000 and 2001 and was ultimately demoted shortly after Cole was terminated.

judgment. (Id. at 76, 79).

Lindberg also learned of inappropriate comments Cole had made to Joanne Parker, another district manager. At a dinner party attended by Abbott employees, Parker noted that her widowed father had begun dating again. Cole responded that "the only way to cure that is to cut off his pecker or get laid." (Id. at 92-93; Ex. 6 to Manning Dep.). On another occasion, when Parker was pregnant, Cole told her that he noticed that her breasts were getting bigger. (Cole Dep. at 190-91).

On May 2, 2001, Michelle Berger, a sales representative in Cole's district, sent a letter voicing several complaints about Cole to Winterburn with a copy to Lindberg. (Id. at 125-126; Winterburn Dep. at 148-150). Berger alleged that Cole had told a customer that Berger was a "spoiled brat," had made repeated, inappropriate references to the fact that she was a working mother, had told a customer he would talk to him "when I'm not with these women," referring to Berger and another employee, and had criticized Abbott's diversity program, stating that Abbott should re-evaluate the type of people it was hiring. (Cole Dep. at 130-132, 153, 203-204).

Trenton Manning, Plant Manager of Human Resources, was sent a copy of Berger's letter. (Manning Dep. at 30; Ex. 1 to Manning Dep.). He contacted Lindberg and recommended an investigation into the allegations. (Manning Dep. at 30). Based on Berger's letter and the previous complaints by Cline, Heinrich and Parker, Manning and Lindberg discussed the possibility of demoting Cole. They decided to travel to Texas on May 17, 2001 to meet with Cole to get his side of the story. The meeting did not last long because Cole threw his attorney's business card on the table and said that he intended to stay at Abbott as a district manager for another five years. (Lindberg Dep. at 119). He denied most of Berger's allegations.

3

Cole was placed on administrative leave while an investigation was conducted. Manning and his staff interviewed ten district sales representatives who reported to Cole, four district managers who were Cole's peers, and a national account manager. (Ex. 8 to Manning Dep.). Some gave Cole positive evaluations. Keith Anderson said that he had never heard Cole say anything inappropriate. (Ex. B to Reply, Anderson Report). Martha Blevins reported that Cole was fair and a good boss, and that she had never witnessed Cole behaving inappropriately. (Ex. B to Reply, Blevins Report). Tom Palmer said that Cole was helpful and hands-off as a manager. (Ex. B to Reply, Palmer Report). Palmer expressed some concern with the manner in which the investigation was being conducted and felt as though it was slanted negatively against Cole. (Id.) Manny San Miguel opined that Cole was a good boss and indicated that he respected Cole's discipline with his employees. (Ex. B to Reply, San Miguel Report).

However, eleven of the fifteen interviewees reported concerns about Cole's inappropriate behavior and leadership skills. Several of them characterized him as a "good old boy." Michelle Berger reiterated her complaints from her earlier letter, namely that Cole had made numerous degrading remarks about her to customers, called her a "spoiled brat," questioned whether working mothers could be sales representatives, and advised her not to cry in front of customers. (Ex. 17 to Cole Dep.; Ex. 8 to Manning Dep.; Lindberg Dep. at 125-126, 128, 133-134; Manning Dep. at 298-300). Annette Cline said that Cole was a racist, and noted that he had called Joanne Parker a "bitch," and made inappropriate jokes about women in front of customers. (Ex. 8 to Manning Dep.; Lindberg Dep. at 190; Manning Dep. at 199, 214). Cline stated that she found working with Cole to be "demeaning." (Manning Dep. at 217, Ex. 8 to Manning Dep.) Joanne Parker stated that Cole "bashes women" and sees them as "a necessary evil." (Ex. 8 to Manning

4

Dep.).

Hadley Hoff stated that Cole criticizes his sales representatives in front of other people and sometimes engages in questionable behavior with customers and coworkers, crossing the line into possible sexual harassment. (Manning Dep. at 350 and Ex. 8; Cole Dep. at 219). Anne Faust reported that she believes Cole is a chauvinist, and that Cole has repeatedly offended her. Once, when she was pregnant, he told her that she could not "have a family and this job." (Ex. 8 to Manning Dep.; Cole Dep. at 221-223). Patti Chapman-Boyce said that Cole does not like working women and believes that Abbott should stop hiring minorities. (Manning Dep. at 230-34, 239 and Exhibit 8). She said that Cole "picked on" his employees and managed them by intimidation. She didn't feel that he evaluated her the same as he did a man. (Ex. 8 to Manning Dep.). Jan Kirk reported that Cole's employees were afraid of him and that he had a "demeaning management style." (Id.).[2] Steve Schlies, Daryl Mayfield, and D'Lana Matta each confirmed that Cole had a reputation for making inappropriate comments. (Id.). Manny San Miguel agreed that some of Cole's comments could be offensive to minorities and women. (Ex. 6 to Manning Dep.; Cole Dep. at 202).

Manning's May 23, 2001 report to Lindberg stated that "Bob has a history of making derogatory, lewd, racist, and chauvinistic comments," and has a "demeaning and intimidating style of management." (Ex. 2 to Lindberg Dep.). Based on the seriousness and pervasiveness of Cole's inappropriate behavior uncovered during the investigation, Manning concluded that it

---

[2] Cole takes issue with Manning's reliance on the negative comments made by Berger, Kirk, Chapman-Boyce and Cline. Cole maintains that their comments were made in response to negative performance reviews he gave them and notes that some of their complaints date back several years.

5

would be best to terminate him despite his long tenure with the company. (Id.). Winterburn was not consulted in the decision. (Winterburn Dep. at 217; Manning Dep. at 109). Manning's recommendation for termination was reviewed and approved by the Vice President for Human Relations and by Lindberg. (Manning Dep. at 159). Cole was discharged with retirement on May 30, 2001. (Lindberg Dep. at 174; Manning Dep. at 109, 390). He was 60 years old at the time. (Cole Dep. at 243). He was replaced by Kirk Arnold, who was 36 years old. (Fisher Dep. at 103-04).

Cole filed suit against Abbott alleging age discrimination. He contends that he was terminated because he was the oldest district manager in his region and one of the oldest in the nation. He further argues that the reasons given for his termination were pretextual. Cole seeks damages for loss of employment, emotional distress, loss of past and future wages and benefits, liquidated damages, punitive damages, and attorney's fees and interest.

## II. Summary Judgment Standard

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury

6

if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)). See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the]

7

essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). See also Anderson, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). The court

8

may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

**III.     Discussion**

Cole alleges that Abbott engaged in age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). That statute makes it unlawful for employers to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In order to prevail on a claim of age discrimination, a plaintiff must prove that a discriminatory animus "actually motivated the employer's decision." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000).

In an employment discrimination case, a plaintiff can withstand a motion for summary judgment either by presenting direct evidence of discrimination or, using the analytical framework set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), by presenting circumstantial evidence from which a jury may infer a discriminatory motive underlying an adverse employment action. See Kline v. Tennessee Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997). Direct evidence "is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999). In this case, Cole does not present any direct evidence of age discrimination. His claim is therefore analyzed under the framework set forth in McDonnell Douglas.

Under that framework, a plaintiff must first establish a prima facie case of age

9

discrimination. If the plaintiff does so, an inference of discrimination arises and the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802-03. If the employer articulates such a reason, the presumption of discrimination drops away, leaving only the issue of "discrimination *vel non*." Reeves, 530 U.S. at 142-43. The plaintiff must then prove by a preponderance of the evidence that the reason offered was pretextual. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). The plaintiff has the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against him. Id..

    **A.**     **Prima Facie Case**

Cole may establish a prima facie case of age discrimination by proving that: (1) he was over forty years old; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) he was either replaced by someone who was substantially younger or was treated differently than a similarly situated younger employee. See Policastro v. Northwest Airlines, Inc., 297 F.3d 535, 538-39 (6th Cir. 2002). The plaintiff is to prove the elements of the prima facie case by a preponderance of the evidence. Burdine, 450 U.S. at 253. However, the plaintiff's burden of establishing a prima facie case is not meant to be "onerous." Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 870 (6th Cir. 2001) (citing Burdine, 450 U.S. at 253).

Defendant concedes that Cole was over forty years old, that his termination constitutes an adverse employment action, and that he was replaced by a younger employee. However, Defendant argues that Cole cannot establish a prima facie case because, based on the evidence presented, no reasonable jury could find that he was qualified for his position. Citing McDonald v. Union Camp Corporation, 898 F.2d 1155, 1160 (6th Cir. 1990), Defendant argues that Cole

was not qualified because, although he met sales performance expectations, he had other problems and was not performing "at a level which met his employer's legitimate expectations." According to Defendant, the results of the investigation "left no doubt that his deficiencies in leadership and judgment had created an unhealthy work environment," and led Defendant to conclude that Cole was not qualified to be a district manager. (Def.'s Mot. Summ. J. at 14-15).

These deficiencies in leadership and judgment, however, are the same reasons given by Defendant for terminating Cole, and therefore cannot be considered in determining whether he was qualified for his position. In Cline v. Catholic Diocese of Toledo, 206 F.3d 651 (6th Cir. 2001), the Sixth Circuit held that "when assessing whether a plaintiff has met [his] employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." Id. at 660-61. In other words, a court cannot conflate the prima facie analysis with the second stage of the McDonnell Douglas inquiry. The only relevant inquiry at the prima facie stage of the analysis is whether the employee was *objectively qualified* for the position, taking into consideration the employee's education, experience, and skills. See Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 575-76 (6th Cir. 2003). See also Cicero v. Borg-Warner Automotive, Inc., 280 F.3d 579, 585-588 (6th Cir. 2002). In a recent case, the Sixth Circuit explicitly stated, "[f]or purposes of the prima facie case analysis, a plaintiff's qualifications are to be assessed in terms of whether he or she was meeting the employer's expectations *prior to and independent of the events that led to the adverse action*." Tysinger v. Zanesville Police Department, 463 F.3d 569, 573 (6th Cir. 2006) (citing Cicero, 280 F.3d at 585; Cline, 206 F.3d at 662-63) (emphasis added).

11

Based on the evidence presented, no reasonable jury could find that Cole lacked the education, experience, and skills necessary to perform his duties as district manager. Cole was a certified medical technologist with more than twenty-five years of experience and a proven track record of success with the company. While the Court agrees with Defendant that leadership skills and interpersonal skills may also be relevant to a determination of whether an individual is objectively qualified for a position, the fact remains that the extent of Cole's deficiencies in these areas was not discovered by upper-level management prior to the investigation that lead to his termination. Because these deficiencies are the same reasons given for Cole's termination, they cannot be considered at this stage of the analysis. Finding no genuine issue of material fact concerning whether Cole was objectively qualified for his job, the Court concludes that Cole has established a prima facie case of age discrimination. The burden therefore shifts to Abbott to articulate a legitimate, non-discriminatory reason for terminating him.

### B.    Legitimate, Non-Discriminatory Reason for Termination

Defendant contends that Cole was terminated because of his repeated incidents of poor judgment, deficient leadership skills, and inappropriate conduct, specifically his crude and obscene comments to female co-workers and a female job applicant. The Court finds that Defendant has met its burden of articulating a legitimate, non-discriminatory reason for discharging Cole. Therefore, as discussed above, the presumption of discrimination drops away and the burden shifts back to Cole to prove, by a preponderance of the evidence, that the stated reason for his termination was pretextual.

### C. Pretext

Cole may establish pretext by showing that: (1) the proffered reason had no basis in fact; (2) the proffered reason did not actually motivate the discharge; or (3) the proffered reason was insufficient to motivate the discharge. See Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994); Peters v. Lincoln Elec. Co., 285 F.3d 456, 471-72 (6th Cir. 2002). To establish that the proffered reason had no basis in fact, the plaintiff must show that "the proffered bases for the plaintiff's discharge never happened, i.e., that they are 'factually false.'" Manzer, 29 F.3d at 1084 (citing Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1123-24 (7th Cir. 1994)). Cole does not argue that the reasons given for his termination are factually false. Instead, he relies on the second and third methods of establishing pretext.

To establish that the proffered reason did not actually motivate the discharge, a plaintiff "admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal," but "attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." Manzer, 29 F.3d at 1084.

Cole cannot satisfy this standard. In fact, he has very little, if any, circumstantial evidence that he was discharged because of his age. He first points to a statement allegedly made by his supervisor, Tom Winterburn. According to Cole, after Winterburn received a negative performance evaluation, Winterburn remarked that Abbott was "trying to get rid of old guys like us." (Cole Dep. at 115). In his deposition, Winterburn denied making this statement.

13

In fact, he testified that he did not believe that Abbott would terminate any employee on the basis of age. According to Winterburn, while he was, in fact, concerned about his own future at the company, that concern was based on divergent management styles and not on his age. (Winterburn Dep. at 263-65).

Even if Winterburn did make the statement at issue, it would carry very little weight. In Cooley v. Carmike Cinemas, Inc., 25 F.3d 1325 (6th Cir. 1994), the Sixth Circuit held that in deciding whether allegedly discriminatory comments are evidence of age bias, the court must consider:

> (1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination.

Id. at 1330. In applying these factors to Winterburn's alleged statement, it is clear that the statement has no probative value. Winterburn did not participate in the decision to terminate Cole. Lindberg and Manning believed that Winterburn's lack of leadership was part of the problem and, therefore, did not consult him. (Winterburn Dep. at 217; Manning Dep. at 109). Moreover, Winterburn's alleged comment was not made in reference to Cole's termination; rather, Cole admits that Winterburn was worried about his own future at the company in the wake of two consecutive negative performance evaluations. Finally, Winterburn's alleged remark appears to be one isolated comment made many months before Cole was terminated.

As additional evidence of a discriminatory animus, Cole points to minor discrepancies between handwritten notes made by Manning and his staff during interviews with Cole's colleagues and the typewritten summary of those notes. In the handwritten notes, Manning

14

noted that several individuals characterized Cole as a "good old boy" or part of a "good old boy network." In the typewritten summary, however, these references are changed to "good ole boy." Notes from an interview with Anne Faust indicate that when she complained to Winterburn about something Cole had said to her, Winterburn replied in an exasperated tone, "old Bob." In the typewritten summary, this was changed to "oh Bob." Cole contends that these revisions cast suspicion on Defendant and give rise to an inference that Manning was trying to cover up evidence that age played a part in the decision to terminate him. This argument lacks merit.

     First, Manning had nothing to gain by making these revisions. The allegedly offending comments -- about Cole being a "good old boy" and Winterburn's remark about "old Bob" – were not made by Manning or by anyone else who participated in the decision to terminate Cole. They were made by other colleagues; Manning simply recorded them. Moreover, regardless of the spelling, the term "good old boy" or "good ole boy" has nothing to do with age.[3] The Court further notes that even if Manning changed the spelling in the typewritten summary of the interview notes, Manning's May 23, 2001 report to Lindberg, recommending Cole's termination, again states that "Bob is a good old boy." (Ex. 2 to Lindberg Dep.). If Manning were truly trying to cover up a discriminatory animus, it seems that he also would have changed "old" to "ole" in his report to Lindberg. Under the circumstances presented here, the fact that the spellings were changed in the typewritten summary of the interview notes does not give rise to

---

    [3] The <u>American Heritage Dictionary of the English Language</u> (4th ed. 2000) defines "good old boy," "good ol' boy" or "good ole boy" as "a man having qualities held to be characteristic of certain Southern white males, such as a relaxed or informal manner, strong loyalty to family and friends, and often an anti-intellectual bias and intolerant point of view."

15

an inference that the real reason Cole was terminated was because of his age.

Finally, as evidence of Defendant's discriminatory motive, Cole notes that Lindberg was found personally liable for age discrimination by a jury in a lawsuit brought in state court by another Abbott employee, a district manager who was assigned to an undesirable territory as part of a restructuring. See Jelinek v. Abbott Laboratories, 164 Ohio App. 3d 607, 843 N.E.2d 807 (Ohio Ct. App. 2005).[4] The fact that a jury found that Lindberg had discriminated against that particular employee on the basis of age in that particular situation, however, has little bearing on the question of whether Lindberg discriminated against Cole in this case. Id. at 626, 843 N.E.2d at 821-22 (holding that the trial court did not abuse its discretion in excluding evidence of a prior verdict against two named defendants for age discrimination).

To summarize, the only evidence presented by Cole to support his claim that it is more likely than not that Defendant's explanation for his termination did not actually motivate his discharge is: (1) Winterburn's alleged statement that Abbott was "trying to get rid of old guys like us;" (2) Manning's spelling revisions to the handwritten interview notes; and (3) the prior verdict against Lindberg. For the reasons set forth above, this evidence carries little or no weight. Based on the evidence presented, no reasonable jury could find that "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup" for age discrimination. See Manzer, 29 F.3d at 1084.

Cole also argues that the proffered reason was insufficient to motivate his discharge. To

---

[4] The trial court later granted a motion for judgment notwithstanding the verdict on the age discrimination claim. In the alternative, the court conditionally granted defendant's motion for a new trial and motion for remittitur on the amount of damages. These decisions were affirmed in part and reversed in part on appeal. See Jelinek, 164 Ohio App. 3d 607, 843 N.E.2d 807 (Ohio Ct. App. 2005).

establish that the proffered reason was insufficient to motivate the discharge, the plaintiff must prove that even if the proffered reason for plaintiff's discharge did happen, it was not so egregious as to warrant termination. This is usually established by evidence that other employees who are similarly situated and engaged in the same type of behavior were not subject to the same adverse employment action as the plaintiff. Manzer, 29 F.3d at 1084. Cole presents no such evidence.

Although Cole argues that he should have been subjected to progressive discipline instead of being terminated, he acknowledges in his memorandum in opposition that Defendant's personnel policy authorizes immediate termination as a possible consequence for workplace harassment. Manning's investigation revealed that many of Cole's colleagues had concerns about Cole's inappropriate behavior, poor judgment, and demeaning management style. Manning concluded that Cole's "derogatory, lewd, racist, and chauvinistic comments" and his open criticism and harassment of his peers and employees had "created a hostile work environment." (Ex. 2 to Lindberg Dep.). Based on the egregious and pervasive nature of the complaints lodged against him by so many of his coworkers, no reasonable jury could find that the reason given for Cole's termination was insufficient to motivate his discharge.

Finally, Cole argues that summary judgment should rarely be granted in discrimination cases where the employer's intent or motivation is at issue. He notes that in Reeves, the Supreme Court held that in some cases, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." 530 U.S. at 148. In such cases, the plaintiff may not need to introduce additional, independent evidence of a discriminatory motive.

<u>Id</u>. at 149.  This is not such a case; in fact, Cole does not even argue that the proffered reason for his termination is false.  The Court also noted in <u>Reeves</u> that an employer "would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.  <u>Id.</u> at 148.

In this case, there is no basis to find that the reason asserted for Cole's termination was false.  Evidence shows that Cole repeatedly made inappropriate and offensive comments, exercised poor judgment, and created a hostile work environment, particularly for female colleagues.  Eleven different coworkers expressed their concerns about Cole during the investigation and Cole has not denied the allegations.  Moreover, the evidence that age played any part in the decision to terminate Cole is so weak that no reasonable jury could find that the reason given for his termination was pretextual.  Finding no genuine issue of material fact, the Court concludes that Defendant is entitled to summary judgment.

**IV.    Conclusion**

For the reasons stated above, Defendant's motion for summary judgment (Record at 46) is **GRANTED**.  The Clerk is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**


Date: November 29, 2006                              **/s/ John D. Holschuh**
                                                    John D. Holschuh, Judge
                                                    United States District Court